IN THE MATTER OF THE APPLICATION OF THE OYSTER GROUND COMMITTEE OF THE TOWN OF DARIEN.

The twelfth section of the act of 1881 (Session Laws of 1881, ch. 160,) provides that, upon the application of the oyster ground committee of any town, the Superior Court may appoint a committee to ascertain and locate all the natural oyster beds within the boundaries of such town. Held, not to include any portion of Long Island Sound lying south of a coast line established by the act, but that all the area between that line and the south line of the state falls within the exclusive jurisdiction of the State Commissioners of Shell Fisheries.

[Argued June 20th—decided July 16th, 1884.]

APPLICATION of the oyster ground committee of the town of Darien, to the Superior Court, for the appointment of a committee, under the act of 1881, to ascertain and locate the natural oyster beds within the limits of the town. Committee appointed and report made; remonstrance; report re-committed, amended and accepted; appeal by certain parties interested in the application. The case is fully stated in the opinion.

*L. Warner*, for the appellants.

*J. B. Hurlbutt*, for the appellees.

CARPENTER, J. In 1881 the legislature divided the waters of the state in Long Island Sound into two parts by a line, which is fully described in the act, running along or near the shore. The part south of that line is declared to be within the exclusive jurisdiction and control of the state in respect to all shell fisheries, and all shell fisheries north of that line are declared to be within the jurisdiction and control of the towns in which they are located.

The oyster committee of the town of Darien preferred a petition to the Superior Court under the twelfth section of the act for a committee to ascertain, locate and determine all the natural oyster, clam and mussel beds within the boundaries of that town.

The committee assumed jurisdiction over oyster beds lying south of the line, but within the meridian boundary lines of Darien. The Norwalk Oystermen's Protective Association remonstrated against the acceptance of the report so far as it related to grounds south of the line. The report was re-committed, and the committee amended it by striking out the part objected to. As amended it was accepted by the court and the applicants appealed.

The sole question is, whether the committee had jurisdiction south of that line. If they had, the action of the court was erroneous; otherwise not.

The first section of the act declares that the state shall

exercise exclusive jurisdiction and control over all shell fisheries which are located in that area of the state which is within that part of Long Island Sound bounded by the state line on the west, south and east, and northerly by a line following the coast at high water mark, crossing bays and inlets as therein described. The act then provides that "all shell fisheries not within said area shall be and remain within the jurisdiction and control of the towns in which they are located, under the same laws and regulations and through the same selectmen and oyster committees as heretofore."

The second section constitutes the three fish commissioners of the state a board of commissioners of shell fisheries. They are "empowered to make a survey and map of all the grounds within said area (south of the line) which have been or may be designated for the planting or cultivation of shell fish, shall ascertain the ownership thereof, and how much thereof is in actual use for such purpose; they shall also cause a survey of all the natural oyster beds in said area, and shall locate and delineate the same on said map."

The twelfth section, under which this proceeding is had, provides for ascertaining all the natural oyster beds "within the boundaries" of the towns.

The legislature manifestly intended to separate the jurisdiction of the state commissioners from the jurisdiction of the town officials. It was not intended that there should be any mixed or concurrent jurisdiction. When it declared that the commissioners should survey and map the natural oyster beds, it declared by implication that no other tribunal should have jurisdiction over that matter. And when it declared that a committee of the Superior Court should locate the natural oyster beds within the boundaries of the towns, it referred to the boundaries of towns as established in the first section of the act. That is, all the area north of the line established was within the boundaries of the towns; all south of that line is by the act without the boundaries of the towns. This is manifest from the sixth section, which provides that "for all purposes relating to

judicial proceedings in criminal matters, the jurisdiction of justices of the peace of the several towns bordering on Long Island Sound shall extend southerly, by lines running due south by true meridian from the southern termini of the boundary lines between said towns to the boundary line between the states of Connecticut and New York." In the same section it is provided that certain releases shall be recorded "in the town clerk's office in the town *adjacent* to and within the meridian boundary lines of which said grounds are located." A similar expression is found in the fourth section and twice in the seventh section, showing clearly that the legislature intended by the phrase " boundaries of the town," used in the twelfth section, to exclude that portion of the Sound lying south of the line described.

There is no error.

In this opinion the other judges concurred.